**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>vs.<br><br>ST. LOUIS AUTO CAR SALES, LLC and ERIC WARE,<br><br>       Defendants. | Cause Number: 4:21-cv-1088 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Atlantic Casualty Insurance Company ("Atlantic Casualty") files this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §2201 and states:

**PARTIES**

1. Plaintiff, Atlantic Casualty, is and was at all material times, a citizen of the state of North Carolina because it is a foreign insurance corporation organized under the laws of the state of North Carolina with its principal place of business in that state.

2. Defendant, Eric Ware ("Ware"), is an individual and a citizen of the state of Missouri.

3. Defendant, St. Louis Auto Car Sales, LLC ("St. Louis Auto"), is a Missouri limited liability company whose members are Lisa Renaud and Patrick Hamill, both individuals and citizens of the state of Missouri. St. Louis Auto is, therefore, a citizen of the state of Missouri.

1

## VENUE

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this suit occurred in this district.

## JURISDICTION

5. This Court has jurisdiction pursuant to 28 U.S.C. § 2201, the Declaratory Judgments Act, and pursuant to 28 U.S.C. §1332 because all of the defendants are from a state different from the plaintiff and because the matter in controversy exceeds $75,000, exclusive of interest and costs, as alleged in paragraphs 23, 26 and 28 hereof.

## THE UNDERLYING LAWSUIT

6. On March 18, 2021, Ware filed suit against St. Louis Auto alleging violations of the federal Fair Debt Collection Practices Act (FDCPA), the Missouri Merchandising Practices Act (MMPA) and common law fraud in connection with the sale of two vehicles.

7. A copy of Ware's Petition, filed in the Circuit Court of the City of St. Louis, Missouri, is attached as Exhibit A and referred to herein as "the Petition".

8. The Petition alleges that in February or March 2018, Ware purchased a Ford Escort from St. Louis Auto.

9. The Petition further alleges that the Ford Escort "broke down," and St. Louis Auto "gave" him a Dodge Neon "as compensation."

10. The Petition further alleges that the Dodge Neon broke down as well, and Ware was "given" a 2000 model BMW on April 4, 2018 "for compensation" for the previous two vehicles' mechanical failures.

11. The Petition alleges that the purchase contract for the BMW provided that Ware would make 16 payments of $214.11.

12. The Petition alleges that in July 2018, Ware went to work for St. Louis Auto.

13. The Petition alleges that Ware's employers told him they would be taking $50.00 from each of his paychecks to pay for the BMW.

14. The Petition further alleges that in November 2018, Ware purchased a 1998 Ford Explorer from St. Louis Auto.

15. The Petition alleges that three months later, he bought a 2001 Lincoln for which he agreed to make 40 payments of $50.00.

16. The Petition alleges that Ware made those payments from April 2018 through July 2019.

17. The Petition alleges that the BMW should have been paid off by July 2019 but that St. Louis Auto failed to apply "these payments" to the contract and failed to report "these payments" to the credit bureau.

18. The Petition alleges that Ware was fired from his employment with St. Louis Auto on August 16, 2019.

19. The Petition alleges that, ten days later, St. Louis Auto mailed two right-to-cure letters related to "the contracts," which letters communicated significant past-due balances.

20. According to the Petition, the right-to-cure letters 1) were mailed out five days late; 2) failed to specify which contract was in default; 3) failed to state that the insured would repossess the vehicles, and which vehicle would be repossessed; and 4) failed to state that the letters had come from a debt collector.

21. The Petition alleges that St. Louis Auto repossessed the BMW in October 2019. The Petition further alleges that Ware had personal property in the car that has not been returned.

22. For Count I, the Petition purports to state a cause of action under the FDCPA and alleges:

> 29. Defendant's collection attempts are to collect a balance that is not allowed by law or by agreement running to the Defendant.
>
> 31. Defendant's collection attempt did not include a disclosure that the Notice to Cure sent by Defendant was from a debt collector.

23. With respect to Count I, the Petition prays for actual damages, statutory damages "up to one thousand ($1000.00) pursuant to 15 U.S.C. 1692k," costs and attorney's fees pursuant to statute.

24. For Count II of the Petition, under the Missouri Merchandising Practices Act, the Petition alleges:

> 39. Defendant's acts, use and employment of deception, false pretenses, false promises, misrepresentation, unfair practices and the concealment, suppression, or omission of material facts for the sale of consumer products in trade and commerce, is an unlawful practice.

25. The Petition alleges Ware suffered emotional and mental anguish, frustration, annoyance and inconvenience. The Petition also claims economic damages consisting of time, effort and expense necessitated to "force Defendant to comply with its contractual and statutory obligations."

26. For Count II of the Petition, Ware claims actual and punitive damages, attorney's fees and expenses.

27. For Count III of the Petition, Ware alleges common law fraud. More specifically, Ware alleges:

> 45. Mr. Ware was led to believe, by Defendant, that Defendant was applying Mr. Ware's payments and the fifty dollars ($50.00) that was being taken out of Mr. Ware's paycheck to each of Mr. Ware's contracts.

46. Despite these representations to Mr. Ware, Mr. Ware's payments and fifty dollars ($50.00) from Mr. Ware's paychecks were not being applied to Mr. Ware's contracts.

47. By not applying Mr. Ware's payments as represented to Mr. Ware, Mr. Ware has been damaged by the unlawful repossession of Mr. Ware's BMW.

48. When making such representations, Defendant knew that it had no intention to apply Mr. Ware's payments and the fifty dollars ($50.00) from Mr. Ware's paycheck to his contracts.

49. At the time the representations were made, Mr. Ware was ignorant of the falsity of such representations.

50. By purchasing the vehicles and using the vehicles, Mr. Ware relied upon Defendant's representations that they would apply all of Mr. Ware's payments and the fifty dollars ($50.00) from Mr. Ware's paycheck to the contracts.

28. For Count III, the Petition prays for damages in excess of $5,500.00, punitive damages "in the maximum amount allowed by law and up to five hundred thousand dollars ($500,000)", court costs and fees and attorney's fees.

### THE INSURANCE POLICY

29. Atlantic Casualty issued policy number 3120000055 with effective dates of September 1, 2018 to September 1, 2019 ("the Policy").

30. A copy of the Policy is attached as Exhibit B and incorporated herein by reference.

31. The Policy provides covered auto liability, general liability and garage keepers coverage with limits of $1 million per occurrence. The Policy also provides Acts, Errors and Omissions coverage with limits of $100,000, all as more specifically set out in the Policy.

32. The named insured is St. Louis Auto Car Sales LLC.

33. Section I, Paragraph D of the Policy applies to liability for covered "autos", defined by Subparagraph A of Section I as including autos owned by the insured and autos the insured does not own, lease, hire, rent or borrow but uses in connection with the insured's auto dealership.

34. Section I, Paragraph D of the Policy provides, in part:

   **SECTION I – COVERED AUTOS COVERAGE**

   \* \* \*

   **D.  Covered Autos Liability Coverage**

   **1.  Coverage**

   We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos".

   \* \* \*

   We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense." However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply.

35. Section I, Paragraph E of the Policy provides, in part:

   **E.  Garagekeepers Coverage**

   **1.  Coverage**

   **a.**  We will pay all sums the "insured" legally must pay as damages for "loss" to a "customer's auto" or "customer's auto" equipment left in the "insured's" care while the "insured" is attending, servicing, repairing, parking or storing it in your "auto dealer operations" under:

   **(1)  Comprehensive Coverage**

6

   From any cause except:

   **(a)**  The "customer's auto's" collision with another object; or
   **(b)**  The "customer's auto's" overturn.

         *  *  *

36. Section II, Paragraph A, Bodily Injury and Property Damage Liability of the Policy provides, in part:

   **SECTION II - GENERAL LIABILITY COVERAGES**

   **A.**  **Bodily Injury And Property Damage Liability**

   **1.**  **Coverage**

   **a.**  We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies cause by an "accident"; and resulting from your "auto dealer operations" other than the ownership, maintenance or use of "autos".

         *  *  *

     We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

         *  *  *

   **b.**  This insurance applies to "bodily injury" and "property damage" only if:

         *  *  *

     **(2)**  The "bodily injury" or "property damage" occurs during the policy period; and

37. Section III of the Policy provides, in part:

   **SECTION III – ACTS, ERRORS OR OMISSIONS LIABILITY COVERAGES**

7

    **A.**    **Coverage**

We will pay all sums that an "insured" legally must pay as damages because of any "act, error or omission" of the "insured" to which this insurance applies sand arising out of the conduct of your "auto dealer" operations", but only if the "act, error or omission" is committed in the coverage territory during the policy period.

We will have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "acts errors or omissions" to which this insurance does not apply.

                        \*        \*        \*

38. Section III of the Policy includes the following exclusions:

    **B.**    **Exclusions**

This insurance does not apply to:

    **1.**    **Criminal, Fraudulent, Malicious, Dishonest Or Intentional Acts**

Damages arising out of any criminal, fraudulent, malicious, dishonest or intentional "act error or omission: by an "insured", including the willful or reckless violation of any law or regulation. However, this exclusion does not apply to any "insured" who did not:

    **a.**    Personally commit;
    **b.**    Personally participate in;
    **c.**    Personally acquiesce to; or
    **d.**    Remain passive after having knowledge of any such "act, error or omission."

    **2.**    **Bodily Injury, Property Damage Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury."

    **3.**    **Profit Gain**

Damages based upon, attributable to or arising in fact out of the gaining of any profit, remuneration or advantage to which any "insured" was not entitled.

* * *

    **5.**     **Noncompensatory Damages**

    Criminal fines or penalties imposed by law or regulation, punitive or exemplary damages or demands for injunctive or equitable relief.

39.     The Policy includes the following definitions:

**SECTION V – DEFINITIONS**

    **A.**     "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

    **B.**     "Act, error or omission" means any actual or alleged negligent act, error or omission committed by an "insured" in the course of your "auto dealer operations" arising:

        **1.**     Out of an "insureds" failure to comply with any local, state or federal law or regulation concerning the disclosure of credit or lease terms to consumers in connection with the sale or lease of an "auto" in your "auto dealer operations", including but not limited to, the Truth in Lending and Consumer Leasing Acts;

* * *

    **F.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

* * *

    **H.**     "Customer's auto" means a land motor vehicle, "trailer" or semitrailer lawfully within your possession for service, repair, storage or safekeeping, with or without the vehicle owner's knowledge or consent. A "customer's auto" also includes any such vehicle left in your care by your "employees" and members of their households who pay for services performed.

* * *

    **Q.**     "Loss" means direct and accidental loss or damage. But for Garagekeepers Coverage only, "loss" also includes any resulting loss of use.

9

\* \* \*

  **U.** "Property damage" means damage to or loss of use of tangible property.

40. The Policy includes the following exclusion:

**EXCLUSION – PUNITIVE DAMAGES**

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING

COMMERCIAL GENERAL LIABILITY COVERAGE PART
AUTO DEALERS COVERAGE FORM
GARAGE COVERAGE FORM

This insurance does not apply to any claim of or indemnification for punitive, exemplary and/or statutorily enhanced damages, including, but not limited to, multiple damages. If a "suit" seeking both compensatory and punitive, exemplary and/or statutorily enhanced damages, including but not limited to, multiple damages has been brought against you for a claim covered by this policy, we will provide defense for such action. We will not have any obligation to pay for any costs, interest or damages attributable to punitive, exemplary and/or statutorily enhance damages, including but not limited to multiple damages.

\* \* \*

41. The Policy also includes the following exclusion:

**EXCLUSION - MENTAL INJURY**

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING

COMMERCIAL GENERAL LIABILITY COVERAGE PART
AUTO DEALERS COVERAGE FORM
GARAGE COVERAGE FORM

This insurance does not apply to any claim, loss, costs or expense arising out of emotional distress, mental anguish, humiliation, mental distress, mental injury, mental suffering, worry, annoyance, anxiety, inconvenience, depression, dissatisfaction, or shock to the nervous system or any physical manifestation of any of the foregoing, or any similar injury unless it arises out of physical injury that occurs to that person.

\* \* \*

42. The Policy also includes the following exclusion:

**EXCLUSION - TRANSFER OF OWNERSHIP**

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING

AUTO DEALERS COVERAGE FORM
GARAGE COVERAGE FORM

This insurance does not apply to any claim, loss, costs or expenses for "bodily injury", "property damage" or physical damage to any covered "auto" after an auto held for sale has been transferred to the customer. The transfer of ownership occurs when possession of the covered "auto" has been surrendered to the customer, or relinquished to a third party transporter or transportation company, regardless of the time the title transfer is processed.

43. In accordance with the Policy provisions quoted above, the Atlantic Casualty Policy does not cover the claims asserted by Ware in the Petition.

44. Nevertheless, upon information and belief, Ware intends to seek recovery from Atlantic Casualty for the damages awarded to him by the court as alleged in paragraphs 23, 26 and 28 of this Complaint.

45. In accordance with the foregoing Policy terms and exclusions, Atlantic Casualty is not obligated to defend St. Louis Auto or anyone else in the litigation filed by Ware as alleged herein, nor is it required to indemnify St. Louis Auto or anyone else for Ware's claims made in the Petition because the Policy attached as Exhibit B does not cover the claims asserted by Ware in the Petition attached as Exhibit A.

46. Atlantic Casualty brings this declaratory judgment action pursuant to 28 U.S.C. § 2201, and states that there is an actual, justiciable controversy between Atlantic Casualty and the defendants named and asks that this Court declare the rights and obligations of the parties with

11

respect to the insurance policy attached as Exhibits B and with respect to the Petition attached as Exhibit A as alleged herein.

### PRAYER FOR RELIEF

Atlantic Casualty prays that defendants be cited to appear and answer and, upon final trial, Atlantic Casualty be granted judgment as follows:

A.  A declaration that the policy of insurance issued by Atlantic Casualty, as alleged, provides no coverage for and no duty on behalf of Atlantic Casualty to provide a defense to or to indemnify St. Louis Auto, or anyone else, for the claims asserted in the lawsuit styled, *Eric Ware vs. St. Louis Auto Truck and Repair, Inc.* in the Circuit Court of the City of St. Louis, Missouri under cause number 2122-CC00559.

B.  A declaration that Atlantic Casualty shall have no duty or obligation to pay on behalf of St. Louis Auto or anyone else any sum that St. Louis Auto or anyone else may become obligated to pay by way of settlement or judgment in connection with the matter styled, *Eric Ware vs. St. Louis Auto Truck and Repair, Inc.* in the Circuit Court of the City of St. Louis, Missouri under cause number 2122-CC00559.

C.  Plaintiff prays for trial by jury on all issues so triable.

Respectfully submitted,

GALLOWAY, JOHNSON, TOMPKINS
BURR & SMITH, P.C.

*/s/*     ***Stephen J. Moore***

_____

Stephen J. Moore (Atty. Reg. #58100)
222 S. Central Avenue, Suite 1110
St. Louis, Missouri 63105
Telephone: (314) 725-0525
Facsimile: (314) 725-7150
smoore@gallowaylawfirm.com
ATTORNEYS FOR PLAINTIFF
ATLANTIC CASUALTY INSURANCE
COMPANY